MILLS SADAT DOWLAT LLP
Arash Sadat (SBN 279282)
Camron Dowlatshahi (SBN 308618)
Kathleen Moore (SBN 358479)
333 South Hope Street, 40th Floor
Los Angeles, CA 90071
Telephone: (213) 613-9434
Email: arash@msdlawyers.com
Email: camron@msdlawyers.com
Email: kathleen@msdlawyers.com

Attorneys for Plaintiff Lori Loveland
and the Putative Class

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORI LOVELAND, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HOME DEPOT U.S.A., INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 3:24-cv-06142-VC<br>Assigned to: Hon. Vince Chhabria<br><br>**PLAINTIFF LORI LOVELAND'S OPPOSITION TO DEFENDANT HOME DEPOT U.S.A., INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: November 20, 2025<br>Time: 10:00 a.m.<br>Dept.: Courtroom 4 (17th Floor) |

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   FACTS ....................................................................................................................3

      A.    Procedural Background.................................................................................3

      B.    Factual Background ......................................................................................3

            1.    Plaintiff's Actual Duties Were Physical, Routine, and Non-
                  Managerial .........................................................................................3

            2.    Yolih Yonan, a Non-Party, Confirms that AMS Were Misclassified..........4

            3.    Plaintiff Had No Real Discretion or Authority to Use Independent
                  Judgment ............................................................................................5

            4.    Chronic Understaffing Required Plaintiff to Perform Non-Exempt
                  Work ..................................................................................................6

            5.    Home Depot Disciplined Plaintiff for Failing to Perform Non-
                  Exempt Work .....................................................................................6

III.  LEGAL STANDARD ............................................................................................7

IV.   ARGUMENT ..........................................................................................................8

      A.    The Court Cannot Dismiss Plaintiff's UCL Claim for Lack of Jurisdiction ...........8

      B.    Plaintiff Spent Over 50 Percent of Her Time Performing Non-Exempt
            Work .............................................................................................................9

            1.    ASMs' Day-to-Day Work Was Manual and Operational...........................9

            2.    Home Depot's Turlock Location Was Chronically Understaffed .............13

            3.    Performance Reviews and Disciplinary Records.......................................14

            4.    Genuine Disputes of Material Fact Exist ...................................................15

      C.    Even When Not Performing the Duties of Associates, Assistant Store
            Managers Did Not Exercise Discretion or Independent Judgment to Qualify
            as Exempt...................................................................................................17

            1.    Plaintiff's Work Was Governed by Detailed Corporate Directives,
                  Leaving No Room for Independent Judgment...........................................18

            2.    Genuine Issues of Material Fact Exist .......................................................20

      D.    Defendant's "Good Faith Dispute" Defense Fails as a Matter of Law and Is
            Improperly Raised at Summary Judgment................................................21

      E.    Equitable Tolling Preserves Plaintiff's Wage-Statement Claim............................22

      F.    The MSJ Relies on Inadmissible Evidence................................................23

V.    CONCLUSION .....................................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Addison v. State of California* (1978)

   21 Cal.3d 313 .................................................................................................................... 22

Anderson v. Liberty Lobby, Inc.,

   477 U.S. 242 (1986) ............................................................................................................ 7

*Barnhill v. Robert Saunders & Co.,*

   125 Cal. App. 3d 1 (1981) ................................................................................................ 21

*Batze v. Safeway Inc.* (2017)

   10 Cal.App.5th 440 ..................................................................................................... 12, 13

*Bothell v. Phase Metrics, Inc.,*

   299 F.3d 1120 (9th Cir. 2002) ......................................................................................... 17

Celotex Corp. v. Catrett,

   477 U.S. 317 (1986)........................................................................................................... 7

*Clevenger v. Welch Foods Inc.,*

   No. SACV 23-00127-CJC-JDEx, 2023 U.S. Dist. LEXIS 38305, (C.D. Cal. Mar. 7, 2023)........ 8

*Collier v. City of Pasadena* (1983)

   142 Cal.App.3d 917 .......................................................................................................... 22

*Eicher v. Advanced Business Integrators, Inc.,*

   151 Cal. App. 4th 1363 (2007) ......................................................................................... 17

*Federico v. Overland Contracting, Inc.,*

   No. C 12-2588 MEJ, 2013 U.S. Dist. LEXIS 144146 (N.D. Cal. Oct. 4, 2013) ........................ 17

*Granato v. Apple Inc.,*

   No. 5:22-CV-02316-EJD, 2023 U.S. Dist. LEXIS 124318, (N.D. Cal. July 19, 2023) ............... 8

*Guthrie v. Transamerica Life Ins. Co.,*

   561 F. Supp. 3d 869 (N.D. Cal. 2021) ................................................................................ 8

*Guzman v. Polaris Industries Inc.,*

   49 F.4th 1308 (9th Cir. 2022) ........................................................................................... 8

*Heyen v. Safeway Inc.*,

    216 Cal. App. 4th 795 (2013) ........................................................ 10, 11, 12, 13, 17, 20

*Huerta v. CSI Elec. Contrs., Inc.*,

    2025 U.S. Dist. LEXIS 92295 (N.D. Cal. May 14, 2025) ........................................... 21

*In re Family Dollar FLSA Litigation*,

    637 F.3d 508 (4th Cir. 2011) ...................................................................... 10, 19, 20

*Lantzy v. Centex Homes*,

    31 Cal.4th 363 (2003) ........................................................................................... 22

*Maldonado v. Epsilon Plastics, Inc.*,

    22 Cal. App. 5th 1308 ........................................................................................... 21

*McDonald v. Antelope Valley Cmty. Coll. Dist.* (2008)

    45 Cal.4th 88 ................................................................................................. 22, 23

*Morgan v. Rohr, Inc.*,

    2023 U.S. Dist. LEXIS 204868,  (C.D. Cal. Nov. 15, 2023) ......................................... 9

*Musgraves v. Sears Holding Mgmt. Corp.*,

    2012 U.S. Dist. LEXIS 113989 (C.D. Cal. July 19, 2012) ................................... 18, 19

*Nordquist v. McGraw-Hill Broad. Co.*,

    32 Cal. App. 4th 555 (1995) .......................................................................... 10, 15, 20

*Palazzolo-Robinson v. Sharis Mgmt. Corp.*,

    68 F. Supp. 2d 1186 (W.D. Wash. 1999) ................................................................. 10

*Pedroza v. PetSmart, Inc.*,

    2012 WL 9506073 (C.D. Cal. June 14, 2012) ........................................................... 21

*Ramirez v. Yosemite Water Co.*,

    20 Cal. 4th at 802 ................................................................. 9, 13, 14, 15, 17, 20

*Reeves v. Sanderson Plumbing Prods., Inc.*,

    530 U.S. 133 (2000) ............................................................................................. 8

*Safeway Wage & Hour Cases*,

    43 Cal. App. 5th 665 (2019) .................................................................................. 12

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) .................................................................................. 8

*Tolan v. Cotton*,
    572 U.S. 650 (2014) ....................................................................................... 7, 17

*Topete v. Red Robin Int'l, Inc.*,
    2018 WL 5917905 (C.D. Cal. Aug. 30, 2018) ......................................................... 21

**Statutes**

29 C.F.R. § 541.108 ......................................................................................... 10

29 C.F.R. § 541.202 ......................................................................................... 20

Cal. Code Regs. tit. 8, § 11070 ................................................................... 9, 17, 20

Cal. Code Regs. tit. 8, § 13520 ............................................................................. 21

Cal. Lab. Code § 2699.3(a)(1)(A) .................................................................... 22, 23

Fed. R. Civ. P. 56(a) ........................................................................................... 7

**Rules**

Federal Rules of Evidence 1002 ........................................................................... 23

Federal Rules of Evidence 401 ............................................................................. 24

Federal Rules of Evidence 403 ............................................................................. 24

Federal Rules of Evidence 602 ....................................................................... 23, 24

Federal Rules of Evidence 701 ............................................................................. 23

Federal Rules of Evidence 702 ............................................................................. 23

Federal Rules of Evidence 802 ............................................................................. 23

**Other Authorities**

DLSE Enforcement Manual § 53.6.2.1 .............................................................. 17, 19

1

## I.      **<u>INTRODUCTION</u>**

2       Home Depot U.S.A. Inc.'s ("Defendant" or "Home Depot") Motion for Summary

3  Judgment ("MSJ") improperly attempts to convert sharply disputed facts into legal conclusions

4  and presents this Court with a materially distorted version of how the law applies to those facts.

5       California's executive exemption turns on the realistic requirements of the job and how the

6  employee *actually spent* her time, not the employee's title, aspirational job description, or after-

7  the-fact characterizations. The record here—which includes Lori Loveland's ("Plaintiff" or "Ms.

8  Loveland") testimony, a corroborating declaration from another Home Depot Assistant Manager

9  ("ASM"), Home Depot's own disciplinary documents, schedules, and 30(b)(6) deposition

10  admissions—shows that Plaintiff's day-to-day work as an ASM was dominated by manual,

11  customer-service, stocking, floor-maintenance, and other associate-level tasks performed alongside

12  hourly employees, under detailed corporate checklists, with no meaningful discretion over budgets,

13  scheduling, vendors, or inventory beyond preset limits. On these facts, a reasonable jury could

14  readily find that Plaintiff spent well over half of her time performing non-exempt work and lacked

15  the "discretion and independent judgment" necessary for the exemption.  These are clear, triable

16  issues that preclude summary judgment.

17       Defendant's brief depends on mislabeling. It relabels "cart walks" (collecting trash,

18  scanning mis-shelved items, resetting aisles) as "store walks," and recasts basic customer service

19  as "management." But California courts require the employer—especially on summary

20  judgment—to parse mixed tasks by purpose and to carry the burden with specific evidence

21  distinguishing exempt from non-exempt time. Home Depot offers neither.

22       In fact, the company's own paper trail cuts the other way. Performance notes and Plaintiff's

23  termination paperwork fault Plaintiffs for not sweeping, clearing go-backs (returning items to the

24  sales floor), emptying trash, and similar associate-level chores—confirming the real job was

25  hands-on floor work, not executive management.

26       Chronic understaffing cemented that reality. ASMs, including Plaintiff, routinely stayed

27  late to unload freight and clean when no associates were available, and at times non-exempt

28

Customer Experience Managers ("CXMs") served as the only "assistant manager" on duty. These are classic jury questions under California law.

The MSJ also reprises a failed pleading-stage attack on Plaintiff's unfair competition ("UCL") claim.   Adequacy of legal remedies is a fact-intensive inquiry, ill-suited to resolution on a pretrial paper record—particularly in wage-and-hour cases where restitution/accounting may address underpayments not perfectly captured by time records. Defendant identifies no new facts or law warranting a different result here. And because Home Depot removed this state-filed action, it cannot invoke federal jurisdiction only to claim the Court lacks equitable power to hear a state-law UCL claim. If the Court were to disagree, it should remand the UCL claim, not dismiss it.

Defendant's "good-faith dispute" defense fares no better. Whether Home Depot acted with an objectively reasonable, good-faith belief in its exempt classification of Plaintiff is intertwined with the same contested facts that defeat the exemption on the merits: what the job actually required, what discretion ASMs truly had, and why Plaintiff was counseled or disciplined. These disputes alone bar summary judgment on waiting-time penalties and wage-statement claims. In any event, it is not "good faith" to insist an employee is an exempt executive while directing and disciplining her for failing to complete sweeping, trash, go-backs, and other non-exempt tasks.

Finally, Defendant's timeliness argument ignores equitable tolling. Plaintiff timely served a PAGA notice that specifically identified the same Labor Code violations at issue here, providing notice and reflecting diligent pursuit of rights. Tolling during the LWDA period preserves the wage-statement claim, and Defendant identifies no concrete prejudice to say otherwise.

In short, Home Depot has not carried its summary judgment burden. The record—viewed as Rule 56 requires—supports at least these triable determinations: (1) Plaintiff spent the majority of her time on non-exempt work; (2) ASMs, including Plaintiff, did not customarily and regularly exercise the discretion required for the executive exemption; (3) Defendant's UCL adequacy/jurisdiction arguments cannot be decided as a matter of law on this record; (4) the "good-faith dispute" defense is fact-bound and improper for summary adjudication; and (5) equitable tolling preserves the wage-statement claim. The motion should be denied in its entirety.

//

## II.    FACTS

### A.  Procedural Background

Plaintiff on July 25, 2024 filed her original complaint in the Superior Court of California for the County of Contra Costa. ECF No. 1-1. On August 29, 2024, Defendant removed the action to this Court. ECF No. 1.

After meeting and conferring with Defendant regarding alleged deficiencies in her complaint, Plaintiff on October 18, 2024 filed a First Amended Complaint ("FAC"). ECF No. 14. The FAC asserts claims for: (1) Failure to Provide Overtime Compensation (Cal. Lab. Code §§ 510, 1194, 1198); (2) Failure to Provide Meal Periods (Cal. Lab. Code §§ 226.7, 512, and IWC Wage Orders); (3) Failure to Provide Rest Periods (Cal. Lab. Code §§ 226.7, 512, and IWC Wage Orders); (4) Waiting Time Penalties (Cal. Lab. Code §§ 201-203); (5) Failure to Provide Accurate Wage Statements (Cal. Lab. Code § 226); and (6) Violation of the Unfair Competition Law (Cal. Bus.& Prof. Code §§ 17200, *et seq*.). ECF No. 14 at ¶¶ 32-80.

On November 18, 2024, Defendant filed a motion to dismiss and/or strike. ECF No. 16. On March 10, 2025, the Court denied in substantial part Defendant's motion. ECF No. 26 [Order]. The Court struck Plaintiff's request for injunctive relief as moot. *Id.* at ¶ 4.

### B.  Factual Background

Plaintiff worked for Home Depot as an ASM from 2013 to 2023. Declaration of Lori Loveland ("Loveland Decl."), ¶¶ 2, 11. ASM is the lowest position in Home Depot's corporate hierarchy that is paid a salary. Declaration of Arash Sadat ("Sadat Decl."), ¶ 4, Ex. B [Nicholas Dep. Tr.] at 60:8-16. Although classified as exempt, Plaintiff's day-to-day work consisted primarily of the same physical and customer service tasks performed by her subordinates: hourly-paid associates. Sadat Decl., ¶ 2, Ex. A [Loveland Dep. Tr.] at 26:14-27:7; 37:25-39:18.

#### 1.  Plaintiff's Actual Duties Were Physical, Routine, and Non-Managerial

Plaintiff's daily duties primarily involved "sweeping, picking up trash, scanning and restocking merchandise, assisting customers, and organizing the sales floor." Loveland Decl. at ¶ 3. In practice, Home Depot expected ASMs like Plaintiff to perform these manual tasks personally rather than delegate them, as Plaintiff's Store Managers ("SM") repeatedly told

- 3 -

Plaintiff, "if you can't find anyone to do it, do it yourself." *Id.* This was often necessary, as Home Depot failed to adequately staff the Turlock location at which Plaintiff worked.  Sadat Decl. at ¶ 2, Ex. A [Loveland Dep. Tr.] at 26:14-27:7, 46:2–47:9.

Plaintiff was also required to stay past her scheduled shift to complete associate-level work. Loveland Decl. at ¶ 3. A significant part of her job involved "cart walking"—moving through each aisle to collect trash, straps, and cardboard, scanning misplaced items with her Zebra device, and returning them to their proper locations. *Id.* at ¶ 4. She was further responsible for relocating large cardboard "wing stack" displays to their assigned aisles, tasks that Home Depot explicitly assigned to ASMs rather than hourly employees. *Id.*

This is consistent with Plaintiff's deposition testimony, wherein she stated, "98 percent of your time is with customers, is on the sales floor, is cleaning up, is spending all of that time with your associates and customers, and solving issues." Sadat Decl., ¶ 2, Ex. A [Loveland Dep. Tr.] at 94:4-20. Regarding cart walks, Plaintiff testified that "you were expected all the time—your entire shift—to be on the sales floor and a cart in your hand" walking the racetrack and each aisle. *Id.* at 172:13-22.

Moreover, Customer Experience Managers ("CXMs")—who were classified as non-exempt—were often the only assistant managers scheduled to work, underscoring that Home Depot treated exempt and non-exempt managers interchangeably in practice. Loveland Decl. ¶ 7; Sadat Decl., ¶ 2, Ex. A [Loveland Dep. Tr.] at 31:9-25.

### 2.   Yolih Yonan, a Non-Party, Confirms that AMS Were Misclassified

Yolih Yonan ("Ms. Yonan"), a Specialty ASM who worked with Plaintiff at the Turlock, California location, corroborates Plaintiff's testimony. Declaration of Yolih Yonan ("Yonan Decl."), at ¶ 3. Ms. Yonan "spent over 80% of [her] time performing the job duties of hourly associates," including "cart walking, interacting with customers, picking up trash, selling quotes, and calling customers about orders." *Id.* at ¶¶ 5-6. Ms. Yonan further confirmed that the "day-to-day responsibilities and duties as a [non-exempt] Department Supervisor and an ASM were virtually the same"—both positions that Ms. Yonan held while employed by Home Depot. *Id.* at

¶¶ 2, 8. In Ms. Yonan's experience working with Plaintiff, Plaintiff "also spent the majority of her time performing the job duties of hourly associates." *Id.* at ¶ 11.

Both Ms. Loveland and Ms. Yonan believed they would be disciplined, up to and including termination, for failing to perform non-exempt duties. Loveland Decl. at ¶ 3; Yonan Decl. at ¶ 6. As discussed in Section II.B.5, *infra*, this concern became a reality for Ms. Loveland.

### 3.  Plaintiff Had No Real Discretion or Authority to Use Independent Judgment

Despite Home Depot's characterization of the ASM role as managerial, the evidence shows that every significant operational, financial, and staffing decision was dictated by corporate policy or upper management, depriving Plaintiff of any true discretion or independent authority. Indeed, Home Depot's corporate designee, Glenn Nicholas ("Mr. Nicholas"), confirmed that ASMs had no genuine authority over financial, policy, or operational matters. Mr. Nicholas testified that ASMs:

- Cannot order inventory above the Home Depot-approved maximum, determined using data software (Sadat Decl., ¶ 4, Ex. B [Nicholas Dep. Tr.] at 116:22-117:25);

- Do not have "any input into how budgets are made at their store" (*id.* at 118:21-24);

- Do not have "authority to establish policies and procedures for the company" (*id.* at 118:25-119:2);

- Follow strategies communicated to them via a "weekly merchandising playbook which highlights products and promotions" (*id.* at 119:17-120:3);

- Do not prepare weekly schedules (*id.* at 123:10-14);

- Are not "given access to estimated labor costs for a given week at the location they work" (*id.* at 123:18-20);

- Can provide discounts to customers only up to the corporate-approved $500 limit (*id.* at 124:25-125:8);

- Do not have the authority to "adjust the budget for expenditures in a given week or month" at their stores (*id.* at 126:5-11); and

- Do not have the authority to hire vendors. (*id.* at 126:18-128:12).

While Mr. Nicholas testified that "part of the daily job responsibility of an [ASM] is to develop strategies to sell more product," that was not the case in reality. *Id.* at 119:7-16. In fact, in

- 5 -

his role as District Manager ("DM"), Mr. Nicholas on at least one occasion chastised Plaintiff for attempting to do precisely that. For example, Plaintiff once moved throw pillows to the patio furniture area, instead of completely removing them from the sales floor. Loveland Decl. at ¶ 8. Plaintiff reasoned that by doing this, the pillows could still be sold.  Mr. Nicholas then told Plaintiff that she needed to pack the pillows away.  *Id.*

Simply put, Plaintiff lacked discretion to deviate from corporate merchandising plans or to determine how departments operated. Her work was prescriptive, repetitive, and reactive to corporate instructions rather than managerial decision-making.

### 4.  Chronic Understaffing Required Plaintiff to Perform Non-Exempt Work

Plaintiff and other ASMs were compelled to perform hourly labor due to persistent understaffing. Plaintiff testified that "there wasn't enough people" and that she personally performed freight, cleaning, and stocking duties that should have been handled by associates. Sadat Decl., ¶ 2, Ex. A [Loveland Dep. Tr.] at 26:14–27:7, 46:2–47:9.

For example, on March 3, 2023, there was no one assigned to work in Lumber (referred to as "Construction ASL" on Home Depot's schedule) during closing. Plaintiff testified that she "had to physically go down and clean up Lumber [herself]," including "sweeping, [] removing all the empty pallets, [] doing the trash," and cleaning up broken merchandise. *Id.* at 26:20-24, Ex. A1. She confirmed that "moving someone . . . to go down to that department to help was nonnegotiable, because there wasn't enough people." *Id.* at 25:13–26:13.

Plaintiff also testified that Home Depot was "so limited on people at the store" due to "a lot of callouts" during "2020 to the end of 2022." *Id.* at 43:9–44:20. "ASMs were the ones staying at the stores and cleaning the stores and helping unload the trucks." *Id.* at 46:9–47:9. Ms. Yonan confirmed this, stating "Home Depot was consistently understaffed," with the problem worsening during and after the onset of the COVID-19 pandemic. Yonan Decl. at ¶ 4.

### 5.  Home Depot Disciplined Plaintiff for Failing to Perform Non-Exempt Work

Home Depot's own disciplinary records show that Plaintiff was expected to personally perform the same manual, non-exempt tasks as hourly associates. In 2018, Plaintiff received a Progressive Disciplinary Note ("PDN") because she "did not complete the basic tasks of throwing

- 6 -

trash . . . and completing the ZMA process" and that she should stay after her shift ended to "complete the tasks." Sadat Decl., ¶ 7, Ex. D.

In 2019, Plaintiff received another PDN for failing to address "a shed that ha[d] been wandering around on a cart for a few weeks now" and "mulch by the back garden gate that is not palletized." Sadat Decl., ¶ 8, Ex. E. Her SM noted that she must "follow up with all tasks that are given to her." *Id.* Other Manager's Notes ("MN") reference needing "a stronger visible presence on the sales floor" and "failing to execute merchandising district directive" Sadat Decl., ¶ 9, Ex. F, *id.*, ¶ 10, Ex. G .

On February 20, 2023, Plaintiff received an MN that cited "multiple carts of go backs, [] carts full of trash, and the floor had not been swept." Sadat Decl., ¶ 11, Ex. H.  When Defendant terminated Plaintiff's employment after a decade of service in 2023, it cited "daily sweeping and trash being emptied, shelf maintenance and go carts put away" as reasons for her termination. Ex. Sadat Decl., ¶ 5, Ex. B1.

These directives show that Plaintiff was not exercising discretion or managerial authority— she was being held personally accountable for sweeping, cleaning, organizing, and completing hourly-level labor herself.

### III.    LEGAL STANDARD

Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing the absence of a genuine issue of material fact, and the Court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying those portions of the record that it contends demonstrate the absence of a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the non-moving party presents evidence from which a reasonable jury could return a verdict in its favor, summary judgment must be denied. *Anderson*, 477 U.S. at 248. The Court

- 7 -

"may not make credibility determinations or weigh the evidence," as those functions are reserved

for the jury. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## IV.    ARGUMENT

### A.    The Court Cannot Dismiss Plaintiff's UCL Claim for Lack of Jurisdiction

Home Depot's MSJ simply rehashes the same argument it raised—and lost—on its Motion

to Dismiss: that Plaintiff's UCL claim fails because she has an adequate remedy at law. The Court

rejected that position, observing that "evaluating remedies is a fact-intensive question that, in most

cases, will not be appropriate for resolution at the pleading stage." ECF No. 26 [Order] at ¶ 3.

The Court declined to dismiss Loveland's UCL claim, recognizing that factual

development was required to determine whether legal remedies would be adequate. Defendant has

presented no new facts or authority that compel a different result here.

Further, as Plaintiff previously argued in its Opposition to the Motion to Dismiss, *Sonner v.

Premier Nutrition Corp.,* 971 F.3d 834 (9th Cir. 2020) and *Guzman v. Polaris Industries Inc.*, 49

F.4th 1308 (9th Cir. 2022) simply do not apply.  The reason is simple: *Sonner* and *Guzman*

originated in federal court. Here, by contrast, Home Depot removed this state-court wage-and-hour

action to federal court and now seeks to dismiss the UCL claim on the ground that the federal court

lacks equitable jurisdiction.

In its MSJ, Defendant conveniently omits (again) the slew of federal court cases addressing

UCL claims removed from state court. Courts have held that defendants cannot avail themselves of

federal jurisdiction only to turn around and argue that jurisdiction does not exist in order to have

the case dismissed. *See, e.g., Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869, 872

(N.D. Cal. 2021) (holding that remand for UCL claims in which the court lacked equitable

jurisdiction was "preferable since the suit was initially filed in state court"); *Clevenger v. Welch

Foods Inc.*, No. SACV 23-00127-CJC-JDEx, 2023 U.S. Dist. LEXIS 38305, at *4, 13 (C.D. Cal.

Mar. 7, 2023) (holding that remand of UCL claims was "consistent with the commonsense notion

that a defendant should not be able to avail itself of federal jurisdiction only to turn around and

argue that jurisdiction does not exist in order to have the case dismissed"); *Granato v. Apple Inc.*,

No. 5:22-CV-02316-EJD, 2023 U.S. Dist. LEXIS 124318, at *5, 17 (N.D. Cal. July 19, 2023)

- 8 -

1   (where "absence of equitable jurisdiction over the State Law Claims would leave no remaining

2   claims over which this Court has subject matter jurisdiction, the Court finds that remand to state

3   court under well-recognized abstention principles is more efficient and appropriate than

4   dismissal").

5       Similarly, in *Morgan v. Rohr, Inc.*, 2023 U.S. Dist. LEXIS 204868, at *13 (C.D. Cal. Nov.

6   15, 2023), the court cited *Clevenger* in remanding a UCL claim, explaining that dismissal could

7   "place the UCL claim in a perpetual loop by continuously removing and dismissing a prospective

8   plaintiff's equitable claim," or allow defendants to "utilize removal and dismissal to extinguish a

9   plaintiff's otherwise timely claims by invoking the statute of limitations once the plaintiff refiles."

10  The *Morgan* court further noted that even if defendants promised not to remove again, they had

11  already engaged in the "sort of gamesmanship disfavored by courts of equity" by removing

12  plaintiffs' equitable UCL claims in the first place. *Id.* at *13–14.

13      Simply stated, if the Court determines that it lacks equitable jurisdiction over Plaintiff's

14  UCL claim, the proper remedy is to remand that claim, not dismiss it.

15      Importantly, however, Defendant does not dispute that this Court has jurisdiction over her

16  claims arising under the California Labor Code.  Thus, should the Court decide that it lacks

17  equitable jurisdiction over Plaintiff's UCL claim, it should remand that claim.

18          **B.  Plaintiff Spent Over 50 Percent of Her Time Performing Non-Exempt Work**

19              **1.  ASMs' Day-to-Day Work Was Manual and Operational**

20      Under California law, the executive exemption applies only if the employee's "duties and

21  responsibilities involve the management of the enterprise" and the employee is "primarily engaged

22  in duties that meet the test of the exemption." Cal. Code Regs. tit. 8, § 11070(1)(A)(1)(e). An

23  employee is "primarily engaged" in exempt work only if more than 50 percent of the employee's

24  time is spent on such work. *Id.* at § 11070(2)(L).

25      In applying this standard, courts must consider the realistic requirements of the job—not

26  the employer's job description or idealized version of the work. *Ramirez v. Yosemite Water Co.*, 20

27  Cal. 4th at 802 ("the court should consider, first and foremost, how the employee actually spends

28

his or her time."). Whether an employee spends more than 50% of their time on exempt work is a "factual question." *Nordquist v. McGraw-Hill Broad. Co.*, 32 Cal. App. 4th 555, 565 (1995).

Plaintiff testified that her daily duties included "sales," "markdowns," "process[ing] hazmats," "trash," "sweep[ing]," and "watering" plants. Sadat Decl., ¶ 2, Ex. A [Loveland Dep. Tr.] at 37:25-39:16. She further testified that "customer service was nonstop." *Ibid.* When asked if she "would watch what [associates] were doing and make sure they were doing what they were supposed to be doing," Plaintiff responded, "I didn't watch; I was out on the sales floor with them doing what my store managers asked us to do. And that was to be out there working with our associates alongside of them. *Id.* at 146:15-21.

While "store walks" to "observe and direct subordinates" may be exempt work under some circumstances, Defendant's analogizing store walks to "cart walks" here is misplaced. MSJ at 24. According to Plaintiff, cart walking included moving through each aisle to collect trash, straps, and cardboard, scanning misplaced items with her Zebra device, and returning them to their proper locations. Loveland Decl. at ¶ 4. As noted above, Plaintiff "didn't watch," but worked "alongside" the hourly associates, performing the same tasks as them. While at times Plaintiff may have directed associates to handle tasks, SMs made clear to Plaintiff "if you can't find anyone to do it, do it yourself." *Id.* at ¶ 3. Both Plaintiff and Ms. Yonan believed they would be disciplined or even terminated for failing to complete these tasks. Loveland Decl. at ¶ 3; Yonan Decl. at ¶ 6.

Defendant's reliance on out-of-state cases such as *In re Family Dollar FLSA Litigation*, 637 F.3d 508 (4th Cir. 2011) and *Palazzolo-Robinson v. Sharis Mgmt. Corp.*, 68 F. Supp. 2d 1186, 1191 (W.D. Wash. 1999) to claim that "customer service" constitutes exempt managerial work also fails. Neither decision applies California's more stringent exemption standards, and both conflict with controlling California authority. In this state—and even under federal regulations— *actually performing* customer service duties is non-exempt, while merely *monitoring* the quality of subordinates' customer service may be exempt. *Heyen v. Safeway Inc.*, 216 Cal. App. 4th 795, 809 (2013); 29 C.F.R. § 541.108. *Heyen* specifically identifies "assisting customers with routine matters (for example, finding an item in the store)" as non-exempt work, illustrating that direct customer interaction falls outside the managerial exemption.  216 Cal. App 4th at 809.

- 10 -

Here, the evidence Home Depot cites exemplifies non-exempt activity. Defendant points to incidents in which Plaintiff resolved customer complaints by facilitating returns and purchases of replacement items—tasks that plainly constitute hands-on customer service, not managerial decision-making. Sadat Decl., ¶ 2, Ex. A [Loveland Dep. Tr.] at 126:1–129:4. Plaintiff testified that "customer service was nonstop," describing that her duties included "finding product for customers, instructing customers how product worked, loading product for customers, processing returns, and getting carts for a customer." *Id.* at 37:25-39:18; Loveland Decl. at ¶ 12. This testimony shows that Plaintiff's day-to-day responsibilities were dominated by non-exempt, service-oriented tasks. More to the point, this testimony (and the testimony of Ms. Yonan) directly contradicts the argument advanced by Defendant in its MSJ. A jury, and not the Court, must resolve this dispute.

Defendant also misrepresents Plaintiff's deposition testimony when it claims Plaintiff admitted to performing management duties "98% of the time." MSJ at 24. Plaintiff immediately clarified that "98 percent of your time is with customers, is on the sales floor, is cleaning up, is spending all of that time with your associates and customers, and solving issues." Sadat Decl., ¶ 2, Ex. A at 94:17-20. Plaintiff's testimony describes floor/customer work, not managerial duties.

In *Heyen*, the California Court of Appeal explained that when an employee performs mixed tasks—such as working alongside hourly employees while also supervising them—the trier of fact must determine whether the employee was primarily engaged in exempt or non-exempt work based on the purpose for which the employee undertook them. 216 Cal. App. 4th at 826. Here, the MSJ fails to meet its burden to parse through the mixed tasks, relying exclusively on the ASM job description and by mischaracterizing testimony regarding mixed tasks as managerial only.

Ms. Yonan—an ASM at the Turlock location at the same time as Plaintiff—corroborates that ASMs "spent over 80% of [their] time performing the job duties of hourly associates," including "cart walking, picking up trash, selling quotes, and calling customers about orders." Yonan Decl. at ¶¶ 5-6. Ms. Yonan further confirms that her ASM job duties were "virtually the same" as when she was a non-exempt Department Supervisor ("DS"), establishing that Home Depot's "manager" label for ASMs did not reflect reality. *Id.* at ¶ 8.

- 11 -

1    Even Home Depot's own 30(b)(6) witness, Mr. Nicholas, admitted that ASMs perform

2    "directed activities" from Home Depot leadership. Sadat Decl., ¶ 4, Ex. B [Nicholas Dep. Tr.] at

3    22:10-13. For example, Home Depot uses software called "MyProject" that alerts ASMs to tasks

4    that need to be completed on a given day, like taking a product off the sales floor or hanging

5    signage denoting a sale price. *Id.* at 39:25-40:13, 40:24-41:10. This illustrates that the ASM role is

6    more task-oriented rather than executive in nature.

7    California courts recognize that stocking, customer-service tasks, building displays, and

8    other physical floor work are non-exempt activities. *See Safeway Wage & Hour Cases*, 43 Cal.

9    App. 5th 665, 673 (2019) (characterizing "stocking shelves," "cleaning the store," and "checking

10   out customers" as non-exempt work). Further, if work that is not inherently managerial takes up a

11   large part of the employee's time, it is evidence that this work is a production operation rather than

12   a function directly and closely related to the supervisory or managerial duties. *Id.* at 678.

13   In sum, Home Depot's MSJ fails because it does not meaningfully distinguish between the

14   time Plaintiff spent performing exempt versus non-exempt work. California law requires Home

15   Depot, as the moving party, to present specific evidence breaking down how much of the

16   employee's work was genuinely managerial, rather than relying on generalized job titles or

17   overlapping duties. *Heyen*, 216 Cal.App.4th at 825–826; *Batze v. Safeway Inc.* (2017) 10

18   Cal.App.5th 440, 481–482; *Safeway Wage & Hour Cases*, 43 Cal.App.5th at 681–682. Home

19   Depot offers no such evidence here.

20   Rather, the record shows that Plaintiff routinely performed the same manual and customer

21   service tasks as hourly employees, under strict corporate direction, with little to no discretion to

22   meaningfully manage store operations. She certainly wasn't a "top decision-maker" as Defendant

23   claims, considering that a non-exempt employee, the CXM, held the assistant manager role when

24   no ASMs were present. MSJ at 26 *contra* Loveland Decl. at ¶ 7; Sadat Decl., ¶ 2, Ex. A [Loveland

25   Dep. Tr.] at 31:9-25, Ex. A1. At a minimum, this evidence a creates a triable issue of fact as to

26   whether Plaintiff's "primary duty" was managerial, precluding summary judgment on Defendant's

27   executive exemption defense.

28   //

1

### 2. Home Depot's Turlock Location Was Chronically Understaffed

2      California law recognizes that the realistic requirements of the job—not the employer's job

3  description—govern whether an employee is primarily engaged in exempt duties. *Ramirez*, 20 Cal.

4  4th at 802; *Heyen*, 216 Cal. App. 4th at 822–26. Understaffing that forces managers to spend most

5  of their time performing the same physical and customer-service duties as hourly employees is a

6  hallmark of misclassification. *Batze*, 10 Cal. App. 5th at 482 (explaining that the "realistic

7  expectations" inquiry prevents employers from escaping liability when the employer "constantly

8  diverted" employees to "non-exempt physical or clerical tasks").

9      Here, Home Depot's chronic understaffing required Plaintiff and other ASMs to perform

10 non-exempt tasks on a daily basis. As alleged in the FAC, Plaintiff was required to perform not

11 only her job duties as ASM, but also the job duties of Associates (her supposed subordinates) due

12 to staffing shortages. Plaintiff testified that "there wasn't enough people," forcing her to personally

13 unload freight, sweep, take out trash, and restock shelves—tasks that should have been performed

14 by non-exempt associates. Sadat Decl., ¶ 2, Ex. A [Loveland Dep. Tr.] at 26:14–27:7, 46:2–47:9.

15 "ASMs were the ones staying at the stores and cleaning the stores [after closing] and helping

16 unload the trucks." *Ibid*. Ms. Yonan confirms that "Home Depot was consistently understaffed,"

17 and that the problem "worsened during and after COVID." Yonan Decl. at ¶ 4.

18     Defendant claims that the COVID-19 pandemic did not affect staffing during the relevant

19 time period because COVID benefits of double-time pay and weekly bonuses ended on June 21,

20 2020 and November 15, 2020, respectively. MSJ at 17-18. This argument fails for two reasons.

21     First, Defendant uses the three-year statute of limitations applicable to Labor Code claims,

22 instead of the four-year statute of limitations applicable under the UCL. Therefore, the relevant

23 time period goes back to July 25, 2020, not July 25, 2021, as Defendant claims.

24     Second, Plaintiff alleged in the FAC and testified at her deposition that staffing issues

25 persisted long after 2020. Plaintiff stated they were "so limited on people at the store" due to "a lot

26 of callouts" during "2020 to the end of 2022." Sadat Decl., ¶ 2, Ex. A [Loveland Dep. Tr.] at 43:9-

27 44:20. Then, in 2023, when the Lumber associate on the closing shift called out, Plaintiff testified

28 that she "had to physically go down and clean up Lumber [herself]," including "sweeping, []

- 13 -

removing all the empty pallets, [] doing the trash," and cleaning up broken merchandise. *Id.* at 26:20-25, Ex. A1. Plaintiff confirmed that "moving someone . . . to go down to that department to help was nonnegotiable, because there wasn't enough people." *Id.* at 25:13-26:13. The parties have therefore submitted conflicting evidence on the issue of whether the Turlock location was understaffed, precluding summary judgment.

Home Depot's staffing is critical to adjudicating whether Plaintiff was misclassified as exempt, a dispositive issue on every claim asserted by Plaintiff in her FAC.  A jury can and will find that chronic understaffing transformed Plaintiff's role from that of a manager into that of a floor-level worker. Home Depot cannot rely on theoretical managerial expectations to establish exemption status. It must prove that the employee in fact spent more than 50% of her time on exempt duties under real-world conditions. *Ramirez*, 20 Cal. 4th at 802.  Therefore, even if Plaintiff on occasion suggested and recommended changes of employment status (MSJ at 19-20) or coached or disciplined other employees (MSJ at 25), this does not take away from the fact that much more than 50% of her time was spent on non-exempt duties.

Accordingly, the record here—showing persistent understaffing that compelled Plaintiff to perform manual, non-exempt labor—creates a triable issue of fact as to whether Home Depot's "realistic expectations" rendered the ASM position non-exempt under California law. This evidence precludes summary judgment.

### 3.  Performance Reviews and Disciplinary Records

Home Depot's own performance documentation confirms that Plaintiff's day-to-day work was indistinguishable from that of hourly associates. Plaintiff was disciplined and ultimately terminated for failing to perform purely manual, non-exempt tasks—including, "daily sweeping and trash being emptied, shelf maintenance and go carts put away." Sadat Decl., ¶ 5, Ex. B1.

These performance expectations are consistent with Plaintiff's testimony that she personally swept, cleaned, restocked merchandise, and organized aisles throughout her shift. Sadat Decl., ¶ 2, Ex. A [Loveland Dep. Tr.] at 26:14–27:7, 46:2–47:9. Rather than being evaluated on policy, budgeting, or personnel management, Plaintiff was held accountable for the same physical upkeep and maintenance tasks assigned to hourly employees. This confirms that Home Depot's

- 14 -

1  realistic expectations/requirements of her job were non-managerial. *See Ramirez*, 20 Cal.4th at 802

2  (focusing on the realistic requirements of the job rather than the employer's job description).

3          Home Depot's claim that Plaintiff "was counseled about her failures to effectively manage

4  her departments" (MSJ at 27) is contradicted by the company's own practices and testimony.

5  Plaintiff testified that when she attempted to delegate such duties, she was instructed to perform

6  them herself—her SM repeatedly told her, "if you can't find anyone to do it, do it yourself."

7  Loveland Decl. at ¶ 5. This directive was emblematic of Home Depot's "get down and dirty"

8  culture, in which ASMs were expected to physically perform labor rather than manage those

9  performing it. *Id.* at ¶ 9; Yonan Decl. at ¶ 5.

10         Accordingly, far from proving that Plaintiff was expected to exercise managerial authority,

11 Plaintiff's performance reviews demonstrate that she was evaluated—and ultimately disciplined—

12 based on her execution of non-exempt, manual labor. While Defendant may try to claim Plaintiff

13 was supposed to instruct her subordinates to perform these tasks, understaffing and the realistic

14 requirements of the job made that impossible. Plaintiff testified that Home Depot was "so limited

15 on people at the store" due to "a lot of callouts" during "2020 to the end of 2022." Sadat Decl., ¶ 2,

16 Ex. A [Loveland Dep. Tr.] at 43:9-44:20. "ASMs were the ones staying at the stores and cleaning

17 the stores and helping unload the trucks because there were so many callouts." *Id.* at 46:2-47:9. On

18 at least one occasion in 2023, no associate was scheduled to work in Lumber after closing and

19 Plaintiff had to perform all of the associate's tasks, including sweeping, removing all the empty

20 pallets, and taking out the trash.

21         Ms. Yonan, another ASM at Turlock, confirmed this, stating "Home Depot was

22 consistently understaffed," with the problem worsening during and after the onset of the COVID-

23 19 pandemic. Yonan Decl., ¶ 4. This evidence supports the conclusion that Defendant's realistic

24 expectations for ASMs were inconsistent with exempt managerial duties and instead reflected a

25 primarily non-exempt role.

26         **4.  Genuine Disputes of Material Fact Exist**

27         Whether Plaintiff spent more than 50% of her time on exempt tasks is a classic question of

28 fact for the jury. *Ramirez*, 20 Cal. 4th at 802; *Nordquist*, 32 Cal. App. 4th at 564. The record

- 15 -

contains abundant evidence that Plaintiff's daily work was dominated by non-exempt, physical tasks performed under corporate direction, without genuine discretion or authority. Viewed under California's "realistic requirements" test, a reasonable jury can and would find that Ms. Loveland spent well over 50% of her time on non-exempt work:

- Ms. Loveland testified that her day-to-day consisted of sweeping, trash, stocking/restocking, hazmats, watering, markdowns, and nonstop customer service— working "alongside" associates, not supervising from afar (Sadat Decl., ¶ 2, Ex. A [Loveland Dep. Tr.] at 37:25–39:18, 146:15–21; Loveland Decl. at ¶¶ 3–4, 12);

- What Home Depot calls "store walks" were in practice "cart walks" involving collecting trash/straps/cardboard, scanning mis-shelved items with a Zebra device, and physically resetting the floor—quintessential manual tasks (Loveland Decl. at ¶ 4);

- Chronic understaffing forced ASMs to unload freight, sweep, take out trash, and clean after closing, including a specific March 3, 2023 closing where no Lumber associate was scheduled and Plaintiff personally swept, removed pallets, and handled trash (Sadat Decl., ¶¶ 2-3, Ex. A [Loveland Dep. Tr.] at 25:13–27:7, 46:2–47:9, Ex. A1);

- A fellow ASM corroborated that ASMs spent "over 80%" of their time doing hourly-associate duties and that ASM work was "virtually the same" as non-exempt DS work (Yonan Decl. at ¶¶ 5–6, 8, 11);

- Home Depot's own documents and discipline confirm the company expected Plaintiff to personally perform associate tasks—PDNs/MNs and termination reasons cite failures to sweep, empty trash, handle go-backs, shelf maintenance, and visible floor presence. Sadat Decl., ¶¶ 5, 7-11, Exs. B1, D-H); and

- Home Depot's 30(b)(6) witness admitted ASMs executed "directed activities" dictated by corporate tools (MyProject; weekly merchandising playbooks), with no authority over budgets, schedules, vendors, or inventory beyond preset limits—*i.e.*, checklist execution, not managerial discretion (Sadat Decl., ¶ 4, Ex. B [Nicholas Dep. Tr.] at 22:10–13, 39:25–41:10, 117:1–128:12.

//

1    Under *Ramirez* and *Heyen*, stocking, cleaning, building displays, and hands-on customer

2  service are non-exempt; concurrent supervision does not convert such tasks into exempt work, and

3  the employer bears the burden to parse time by the purpose of the task—which Home Depot has

4  not done. Viewing this evidence in the light most favorable to Plaintiff—as required on summary

5  judgment (*Tolan*, 572 U.S. at 657)—a reasonable jury could easily conclude that Ms. Loveland's

6  "primary duty" was not management, and that she was misclassified as an exempt employee.

7    **C.  Even When Not Performing the Duties of Associates, Assistant Store Managers**

8      **Did Not Exercise Discretion or Independent Judgment to Qualify as Exempt**

9    To qualify for the executive exemption under California law, an employee must

10 "customarily and regularly exercise discretion and independent judgment." Cal. Code Regs., tit. 8,

11 § 11070(1)(A)(1)(d). "Discretion and independent judgment" mean more than the use of skill or

12 experience in applying well-established techniques or following prescribed procedures. *Federico v.*

13 *Overland Contracting, Inc.,* No. C 12-2588 MEJ, 2013 U.S. Dist. LEXIS 144146 (N.D. Cal. Oct.

14 4, 2013) (rejecting summary judgment where the plaintiff presented evidence that he merely

15 implemented the schedule and duties given to him by upper management). It requires authority to

16 make independent choices free from immediate direction or supervision about matters of

17 significance to the business. *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1129 (9th Cir. 2002)

18 (finding the plaintiff did not have authority to make independent choices free from immediate

19 supervision despite the fact that his direct supervisor was offsite).

20   Under California law, merely executing detailed corporate policies, checklists, and

21 prescribed procedures does not constitute "discretion and independent judgment" for exemption

22 purposes. *See Eicher v. Advanced Business Integrators, Inc.*, 151 Cal. App. 4th 1363 (2007)

23 (holding that an employee who engaged in the core day-to-day business of the employer and had

24 no personal effect on policy was non-exempt); DLSE Enforcement Manual § 53.6.2.1 (must

25 "distinguish discretion and independent judgment from the use of independent managerial skills.

26 An employee who merely applies his or her memory in following prescribed procedures or

27 determining which required procedure to follow is not exercising discretion and independent

28 judgment").

1

**1.   Plaintiff's Work Was Governed by Detailed Corporate Directives, Leaving No**

2

**Room for Independent Judgment**

3    Defendant argues, citing *Musgraves v. Sears Holding Mgmt. Corp.*, 2012 U.S. Dist. LEXIS

4    113989 at *1 (C.D. Cal. July 19, 2012), that Plaintiff cannot "evade exempt status by failing to

5    perform the managerial duties expected of her position." MSJ at 26–27. That argument

6    misconstrues both the record and the holding of *Musgraves*.

7    The plaintiff in *Musgraves* was the highest-ranking employee in the store (comparable to

8    the Home Depot SM), responsible for ensuring compliance with regulatory laws (pricing accuracy,

9    food safety, age-restricted sales) and for managing the store's budget, allocating payroll dollars

10   between departments, and approving or adjusting weekly schedules. *Musgraves*, at *7-9. He

11   exercised independent discretion in financial, operational, and policy matters—precisely the kind

12   of authority the executive exemption requires. *Id.* at *6-7, 39-40.

13   Here, even assuming Plaintiff performed all tasks listed in the ASM job description

14   (notably, Home Depot relies on an ASM job description dated October 2023—five months after

15   Plaintiff's termination (Declaration of Barbara Miller ["Miller Decl."], ¶ 3, Ex. A-3), those tasks

16   were highly structured, standardized, and dictated by corporate policies, leaving little opportunity

17   for discretion. ASMs like Ms. Loveland had no independent authority over key financial,

18   operational, or policy decisions. ASMs cannot order inventory above the Home Depot-approved

19   "systematic limit," determined using data software without "approval from the regional

20   merchandising manager (Sadat Decl., ¶ 4, Ex. B [Nicholas Dep. Tr.] at 117:1–118:10), they do not

21   "have any input into how budgets are made at their store" (*id.* at 118:21–24), nor do they enjoy

22   "authority to establish policies and procedures for the company" (*id.* at 118:25–119:2).

23   Instead, ASMs were required to follow "strategies communicated to them via a weekly

24   merchandising playbook which highlights products and promotions." *Id.* at 119:17–120:3. ASMs

25   "do not prepare weekly schedules" (*id.* at 123:12–14), are not "given access to estimated labor

26   costs for a given week at the location they work" (*id.* at 123:18–20), and "cannot adjust the budget

27   for expenditures in a given week or month" (*id.* at 126:5–11). Their discretion was further limited

28   to providing customer discounts only "up to the corporate-approved $500 limit" (*id.* at 124:25–

- 18 -

125:8), and they "do not have the authority to hire vendors" (*id.* at 126:18–128:12).

As the DLSE Enforcement Manual clarifies, an employee who merely applies his or her memory in following prescribed procedures or determining which required procedure to follow is not exercising discretion and independent judgment.  DLSE Enforcement Manual § 53.6.2.1. That is precisely what Ms. Loveland's job entailed, to the extent she was not simply performing the work of hourly employees.

Although Home Depot's designated witness, Mr. Nicholas, asserted that "part of the daily job responsibility of an [ASM] is to develop strategies to sell more product" (*id.* at 119:8–10), his own conduct as DM belies that claim. When Plaintiff attempted to increase sales by moving throw pillows to the patio furniture section, Mr. Nicholas reprimanded her for deviating from corporate direction. Loveland Decl. at ¶ 8. Such evidence confirms that ASMs lacked meaningful discretion or judgment and were penalized for attempting to exercise independent decision-making—further proving their duties were strictly controlled and non-managerial in practice.

Thus, unlike the plaintiff in *Musgraves*, Plaintiff never enjoyed the discretion, autonomy, or managerial control necessary to qualify as exempt—and therefore could not have "failed" to perform duties she was never empowered to perform.

Similarly, Ms. Yonan, who worked as a Specialty ASM alongside Plaintiff, stated that her duties were nearly identical to her prior role as a non-exempt DS, emphasizing that "the day-to-day responsibilities . . . were virtually the same" and entirely dictated by store needs and corporate routines. Yonan Decl. at ¶ 8.

Defendant's reliance on *In re Family Dollar FLSA Litigation*, 637 F.3d 508 is likewise misplaced because the federal "discretion" standard it applies is inconsistent with California's statutory and regulatory definition of exempt executive work. Specifically,  *Family Dollar* reasoned that routine retail activities—such as "how to handle a customer complaint or an employee complaint, how to adjust a schedule, how to arrange stock in a manner that was pleasing, what task to address first, [and] how to keep a mindful eye on shrinkage and breakage while at the same time satisfying customers"—constituted "discretionary acts" inherent in managing a store. *Id.* at 518–19.

California law, however, draws a stricter distinction between managerial discretion and routine operational judgment. Under the applicable Wage Order, an exempt executive must "customarily and regularly exercise discretion and independent judgment" in matters of significance to the management of the business as a whole—not simply in prioritizing day-to-day tasks or resolving customer issues. Cal. Code Regs., tit. 8, § 11070(1)(A)(1)(d). Under federal law, an employee who uses his skill in "applying well-established techniques, procedures or specific standards described in manuals or other sources" does not exercise the level of discretion required for exemption. 29 C.F.R. § 541.202(e). Likewise, the California Supreme Court has emphasized that exemption status depends on the realistic requirements of the job, not generalized assertions that everyday problem-solving constitutes discretion. *Ramirez*, 20 Cal.4th at 802.

Thus, unlike federal law, California law does not equate customer service, routine scheduling, or store-floor organization with "independent judgment." These tasks are operational, not managerial, and performing them—even skillfully—does not transform an employee into an exempt executive. *See Heyen*, 216 Cal.App.4th at 822–23 (rejecting argument that concurrent supervision during customer service automatically rendered work exempt). The *Family Dollar* approach therefore conflicts with California's employee-protective statutory scheme and cannot guide this Court's analysis.

### 2. Genuine Issues of Material Fact Exist

Even if some of Plaintiff's tasks could be considered "managerial," whether she "customarily and regularly exercised discretion and independent judgment" remains a question of fact. *Nordquist*, 32 Cal. App. 4th at 564 . The evidence here—Plaintiff's testimony, corroborating witness declarations, and Defendant's own admissions—shows that ASMs simply carried out detailed corporate directives, without meaningful autonomy or discretion.

Because reasonable jurors could conclude that Plaintiff did not exercise sufficient discretion and independent judgment to qualify as exempt, and there are triable issues of material fact regarding how much time was spent on non-exempt work, summary judgment must be denied.

//

//

**D. Defendant's "Good Faith Dispute" Defense Fails as a Matter of Law and Is Improperly Raised at Summary Judgment**

The good-faith dispute defense under Cal. Code Regs., tit. 8, § 13520 applies narrowly to waiting time penalties and requires the employer to demonstrate that it acted based on an *objectively reasonable, good-faith belief* in the legality of its conduct. *Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 8–9 (1981); *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308, 1333. The regulation itself makes clear that "[a] defense that, under all the facts and circumstances known to the employer, is unreasonable or unsupported by evidence will preclude a finding of good faith." Cal. Code Regs., tit. 8, § 13520(a).

Here, Home Depot cannot establish a good-faith dispute as a matter of law because its exemption defense is contradicted by its own records and testimony. Mr. Nicholas confirmed that ASMs have no discretion over budgets, scheduling, or vendor selection and must strictly follow corporate playbooks and policies. Sadat Decl., ¶ 4, Ex. B [Nicholas Dep. Tr.] at 118:21-119:2, 119:17–120:3, 126:18–128:12. Internal disciplinary records show that Plaintiff was evaluated and reprimanded for failing to personally perform non-exempt tasks such as sweeping, stocking, and trash removal—tasks wholly inconsistent with the duties of an exempt executive. Sadat Decl., ¶ 5, Ex. B1. A defense built on facts that directly contradict the employer's own evidence is not objectively reasonable and therefore cannot constitute a good-faith dispute. *Huerta v. CSI Elec. Contrs., Inc.*, 2025 U.S. Dist. LEXIS 92295 (N.D. Cal. May 14, 2025) at *39 (summary judgment is inappropriate where a material dispute of fact exists as to whether the employer's conduct was objectively reasonable).

Defendant's reliance on *Topete v. Red Robin Int'l, Inc.*, 2018 WL 5917905 (C.D. Cal. Aug. 30, 2018) and *Pedroza v. PetSmart, Inc.*, 2012 WL 9506073 (C.D. Cal. June 14, 2012) is similarly misplaced. Those cases involved undisputed evidence that the employer had a plausible basis for believing managers spent most of their time performing exempt duties. Here, the opposite is true: Home Depot's own testimony and records establish that ASMs were expected to perform hourly labor and lacked managerial discretion. In these circumstances, the good-faith dispute defense cannot be decided as a matter of law.

- 21 -

**E.  Equitable Tolling Preserves Plaintiff's Wage-Statement Claim**

The MSJ argues that Plaintiff's wage statement claim under California Labor Code section 226 is time-barred because the Complaint was filed after the one-year statute of limitations expired. MSJ at 29. However, Plaintiff's claim is timely under the doctrine of equitable tolling.

Equitable tolling "may suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." *Lantzy v. Centex Homes*, 31 Cal.4th 363, 370 (2003). The doctrine applies when three elements are satisfied: (1) timely notice to the defendant of the claims; (2) lack of prejudice to the defendant in gathering evidence; and (3) good-faith and reasonable conduct by the plaintiff in pursuing her rights. *Addison v. State of California* (1978) 21 Cal.3d 313, 319. California courts and federal courts applying California law have repeatedly applied equitable tolling in wage-and-hour and employment contexts. *McDonald v. Antelope Valley Cmty. Coll. Dist.* (2008) 45 Cal.4th 88, 102–103 ("filing of an administrative claim, whether mandated or not, affords a defendant notice of the claims against it so that it may gather and preserve evidence, and thereby satisfies the principal policy behind the statute of limitations"); *Collier v. City of Pasadena* (1983) 142 Cal.App.3d 917, 924 (filing a workers' compensation claim tolled the statute of limitations for filing a disability pension claim).

Here, Plaintiff submitted her Private Attorneys General Act ("PAGA") notice to the Labor and Workforce Development Agency ("LWDA") and served it on Defendant on March 21, 2024—nearly two months before the expiration of the one-year statute of limitations applicable to her claim under California Labor Code section 226. Sadat Decl., ¶ 6, Ex. C. The PAGA notice specifically alleged violations of Labor Code section 226, among others, thereby providing Home Depot with clear notice of the factual and statutory basis of Plaintiff's claims. *Id.* The LWDA then had 65 days to investigate or act on the claim. Cal. Lab. Code § 2699.3(a)(1)(A).

Under *McDonald*, equitable tolling applies where a plaintiff first pursues one remedy (administrative, internal, or contractual) and later files in court for the same underlying wrong. 45 Cal.4th at 101. The purpose is to "afford[] grievants the opportunity to pursue informal remedies, a process [the courts] have repeatedly encouraged." *Id.* at 100. Further, where "exhaustion of an administrative remedy is mandatory prior to filing suit, equitable tolling is automatic." *Id.* at 101.

1  Because Plaintiff's PAGA notice alleged the same wage-statement violations at issue here

2  and was submitted within the limitations period, the statute of limitations was tolled during the 65-

3  day LWDA review period required by statute. Cal. Lab. Code § 2699.3(a)(2)(A); *McDonald*, 45

4  Cal. 4th at 101. Home Depot thus received timely notice of Plaintiff's claims, suffered no

5  prejudice, and was fully aware of the underlying allegations before the expiration of the limitations

6  period. Plaintiff diligently pursued her administrative remedies in good faith before filing this

7  action. Accordingly, the one-year limitations period under Labor Code section 226 was tolled, and

8  her wage-statement claim is timely.

9  **F.  The MSJ Relies on Inadmissible Evidence**

10  Defendant's reliance on the deposition testimony and declaration of Glenn Nicholas ("Mr.

11  Nicholas") is improper under Federal Rules of Evidence 602, 701, and 702. Mr. Nicholas lacks

12  personal knowledge of what Plaintiff actually did on a daily basis and instead offers speculative,

13  generalized opinions about the managerial nature of ASM work and what Plaintiff was "supposed"

14  to do. Declaration of Glenn Nicholas ("Nicholas Decl.") at ¶¶ 6-7. While Mr. Nicholas claims he

15  "regularly" spent time in the Turlock store, he testified that he met Ms. Loveland only 50-100

16  times on store visits "in passing," as he "had responsibilities to do in the office. *Id.* at ¶ 3; Sadat

17  Decl., ¶ 4, Ex. B [Nicholas Dep. Tr.] at 34:11-22. Therefore, Mr. Nicholas does not have personal

18  knowledge of what Plaintiff did every day as part of her job duties. His testimony also includes

19  legal conclusions regarding discretion and independent judgment, which are reserved for the trier

20  of fact. Nicholas Decl. at ¶ 9. Further, any summary of corporate policies constitutes inadmissible

21  hearsay and violates the best evidence rule. Fed. R. Evid. 802, 1002. *Id.* at ¶ 7.

22  Plaintiff further objects to and requests that the Court exclude the portions of the

23  Declaration of Barbara J. Miller ("Ms. Miller") asserting that "Plaintiff authenticated" or

24  "provided foundation for" certain documents during deposition. Declaration of Barbara J. Miller

25  ("Miller Decl.") at ¶¶ 4, 6-9. These statements constitute inadmissible hearsay under Fed. R. Evid.

26  802 because counsel is testifying to what Plaintiff purportedly said or did during deposition—facts

27  that must be shown by the transcript itself, not by counsel's characterization.

28  //

1    The Declaration of Elizabeth Dixon ("Ms. Dixon") lacks foundation and personal

2  knowledge (Fed. R. Evid. 602). Declaration of Elizabeth Dixon ("Dixon Decl.") at ¶¶ 6-8. Ms.

3  Dixon does not claim to have drafted, implemented, or enforced the COVID-19 Temporary

4  Policies or ESPT pay procedures she describes. *Id.* Rather, she admits that she "reviewed"

5  corporate documents to "refresh [her] memory," which demonstrates that her statements are

6  derived from written records—not firsthand experience. *Id.* Further, Ms. Dixon's testimony

7  concerning corporate COVID-19 benefit timelines and ESPT pay cessation is irrelevant to whether

8  Plaintiff's ASM duties were primarily exempt or non-exempt, and poses a substantial risk of

9  confusion and prejudice under Fed. R. Evid. 401 and 403. *Id.*

10  **V.    CONCLUSION**

11    As demonstrated above, Home Depot's MSJ is wholly without merit.  Numerous issues of

12  material fact exist.  When the evidence is viewed in the light most favorable to Ms. Loveland, the

13  Court must deny the Motion for Summary Judgment, in its entirety.

14

15  Dated: October 30, 2025                    MILLS SADAT DOWLAT LLP

16

17                                            By: */s/ Arash Sadat*
                                                     Arash Sadat
18
                                            Attorneys for Plaintiff Lori Loveland
19                                          and the Putative Class

20

21

22

23

24

25

26

27

28